Mr. Canatella, you're up. I'd like to reserve two minutes for rebuttal. Good morning. This case was dismissed on the first amendment complaint and on the ground of prudential standing. I think that's the principal issue of the case and I'd like to address that. The issue is whether precedent in this court, 12 years old albeit, in a case called Canatella v. California, whether the district court gave sufficient respect, if you will, to that precedent. And we would take the position on this appeal and on the record that the district court did not give the precedential respect that the decision deserved, we would say. The idea was that the district court was pretty much fixed on the idea that we can't allow the court doors to swing open for disciplined lawyers or any other lawyers, for that matter, to challenge state bar regulation. And we have to protect against that event. Now, what happens here is we have a very serious issue in Article III here because precedent and its stare decisis doctrine has been for a long, long time a very important issue to respect. And what happened here, it appears, is the court was willing to be – and, of course, precedent can be distinguished, overruled, and any number of other ways that a superior court or an inferior court, for that matter, can avoid a precedent that it disagrees with. But in this case here, the court did not – it did not sufficiently, if I would say, explain its outcome here. It concluded that Canatella I did not control this case, although it's a similar case. And what happens here is the issues in Canatella I are virtually identical to the issues in this case. They both involve an attorney doing his job representing clients in a litigation in their best interests, we presume. And what happened here was the court was unwilling to really confront its distinctions. Can I stop you for a second? Let me focus on your claims against the state bar, if I may, for a minute. Yes. As I understand it, you sought only declaratory and injunctive relief against them. Is that right? Correct. They have filed something with us, as you know, that says that their investigation of this incident has been terminated in your favor. They're closing the file. They're not going to pursue it, and that it's now moot as to them. Why is that wrong? Well, there's more redressability here. First of all, the root cause of all these problems in my history has been that there is a – for 15 years – a bar website that summarizes the discipline that was meted out in 1999 or 98, 99. And for that reason, my relief, which I plead in the first amendment complaint, is expungement. In order for me to be able to represent my clients forthrightly, I need to get out from under the situation where every time I'm in a litigation, the first things normally that happen, my adversaries go to the court and say, look, this man is a disciplined attorney, and you have to be cautious about him. And that, in my opinion, is unacceptable. This is a case – What does the website show? The website – the district court took the summary and put it right in the order. It's two paragraphs or so, which is a very disparaging summary, and doesn't even – Over the 99 proceedings? No, this proceeding here. The district court's order incorporates the summary in the order that we're appealing here, the dismissal order. And that is the problem. That's why I don't believe this case is moot, and that's why – I'm sorry, I'm missing it. What is exactly on the website? Well, it talks about my being disciplined by federal and state judges for various things like delay, vexatious litigation – These are things from – 1999. What is the status of those disciplinary proceedings? What is the status? I mean, those are done deals, aren't they? Oh, yes. Okay, well, why can't they accurately put on their website truthful information about what happened in the past? Well, the question is how long – the effect of that. The effect of that is this. I am distinguished from every attorney who practices in these courts who is no more entitled to practice than I am for the simple reason that I've been disciplined before. And that shouldn't be. I should be on an equal footing with any other lawyer that I confront in a case. And that's not the case because the adversaries are able to take advantage of my disciplined – prior disciplined status and put this in front of the court and prejudice me to begin with. And in this case, it's egregious. Here's a firm that we litigated with, and we – the case was settled, was settled favorably to our client. And 11 months later, we have a bar complaint, which I've never seen, the bar complaint. And then immediately following that, we're going to discipline you or we're going to charge you with A, B, C, and D. And that's how this case started. There was no alternative other than to face discipline in a bar court, which is not a very favorable form for an attorney. Not that I'm foreign shopping, but I know I can get a fair hearing in a – in a federal court. So what I want to go back to is how the district court was able to distinguish Canatella 1, and it did it on two bases. The discipline provisions were different, and that makes – what difference does that make? The discipline provisions, the business and professions code, the rules of professional conduct, that's what was the discipline issues in both cases. And secondly, that the factual setup, that is the procedural setup, if you will, of Canatella 1 was somewhat different than this case. But bottom line is the case involves an attorney representing a client in court. And that's neither – no distinction on that. And so it seemed to me that Canatella 1 controls this case vigorously. And for the court not to accept that, I would say, is a – is a disrespected precedent. Thank you, Your Honor. Thank you, Mr. Canatella. Let me ask our police how they've divided up their time. Good morning. Good morning, Your Honors. Robin Johanson on behalf of the State Bar defendants. I'd like to split my time with counsel for the private defendants. Mr. Girardi will each take five minutes, if that's all right with the Court. That's fine. Thank you. Would you put five minutes on the clock, please? Thank you. Mr. Hanson. I would like to spend most of my time on the mootness issue because we – we have filed a motion to dismiss the appeal based on mootness. Mr. Canatella is arguing that a court could give meaningful relief, which is a requirement in order for a case not to be moot. And he has mentioned expungement as something that he thinks a court could provide. He has not mentioned that this very court has held that he missed the statute of limitations on an earlier case to ask for expungement of his record, and that is Canatella v. Vandekamp, 486 F. 3rd, 1128, back in 2007. The other problem, of course, is that he did not request expungement in his complaint, either in his original complaint or his first amended complaint. So expungement is simply not available. Given that, what other relief could Mr. Canatella get in the district court? And he has asked for a declaratory – for declaratory and injunctive relief ordering the State Bar not to enforce the provisions that were raised in the investigation. Those provisions have to do with how we as lawyers deal with the courts. They have to do with not misleading the courts. They have to do with showing respect and civility for the courts. They also have to do with providing competent representation to our clients. What Mr. Canatella would be asking for would be that a court would order that the State Bar could never invoke those provisions against him, no matter how egregious his conduct was. And I would submit to this court that that kind of relief is simply not plausible. And in order to avoid mootness, it is incumbent on the court to examine whether or not there is the possibility of meaningful relief, and that possibility cannot be merely speculative. So these are the two types of things that Mr. Canatella is requesting. There is no other relief that he asked for. There is no other relief that could be given, because the facts of the case are that he has challenged on an as-applied basis the applicability of those particular provisions to his conduct as a lawyer in the context of a particular case. Those facts have now been reviewed by the State Bar. The State Bar has determined that there was not sufficient evidence, and it has closed its investigation. That's all there is to it. There is no conspiracy. There is no need for further relief. Now, that was done without prejudice, and that's a niggling point that we have to deal with with respect to your motion to dismiss. How do you get around that? Well, Your Honor, we submitted two declarations that explain that last line in the standard letter that goes when a complaint or an investigation is closed. And unless new facts come to light, new facts, the State Bar will not be pursuing this matter. So, again, if new facts come to light, and Mr. Canitella believes that he is being unfairly targeted, perhaps he could file a new lawsuit. We believe that any such lawsuit like that would be barred either by rightness or abstention under Younger v. Harris. But by chance, have you ever run across a case named Kreiser against Newkirk in the Supreme Court? No, I'm afraid I haven't, Your Honor. It deals with a similar situation in a supervised release situation where a prisoner was released to a very, very low level of custody, and he was complaining about what had happened to him at a higher level. And the Court said, well, we have the authority or the State has the authority to send him back to that higher level. It's very, very unlikely, given the criteria he's met, to get down to this halfway house he was in. The Court said the case was moot. And it just seems to me there's an analogy to your case. Well, I think that's so, Your Honor. I see that I have taken, if I could answer the Court's question without cutting into Mr. Girardi's time, I'd appreciate it. I also believe, Your Honor, that an opinion, there are many such opinions which we cited to the Court. I believe that Your Honor also wrote such an opinion, Eichwedder v. Curry, I believe, out of the Seventh Circuit, that involved a parole, a good-time credit for an inmate who was then later released, and the appeal was moot. So I would remind the Court that these kinds of mootness issues do depend on the facts as they stand at the time that the Court is reviewing the matter, not as any new facts might come to light. Thank you. Thank you, Mr. Hanson. Ms. Lopez, would you put five minutes on the clock? There we go. Mr. Girardi. Good morning, Your Honors. May it please the Court. My name is John Girardi, and I represent the individual attorney defendants in this case, or appellees in this case. There is an important issue that was not addressed in Mr. Canatella's argument, and that is the issue of the Noor-Pennington Doctrine. As laid out in our briefs, this is a textbook Noor-Pennington case in which my clients engage in protected petitioning activity when they allegedly reported an incident of misconduct to the State Bar for investigation. There are very important public policy issues with this. Under State law, California State law, Business and Professions Code 6092 specifically protects anyone that makes a complaint to the State Bar about alleged attorney misconduct from any type of retaliatory litigation. Now, obviously, that's not applicable in this case. Mr. Canatella spoke earlier about not forum shopping, but that's, in fact, exactly what he did in this case. The protections under State law are very strict for this type of thing. This would have been subject to an anti-slap motion. It would have been dismissed and that would have been the end of it. By trying to circumvent that, by bringing a 1983 civil rights action, it entirely undermines the public policy interests of both the State Bar to regulate attorneys and to discipline them for misconduct, and also the public policy interest for attorneys and general members of the public to report to the State Bar suspected incidents of attorney misconduct. Now, in this case, we have Judge McBride's order from the underlying litigation, which clearly establishes that misconduct did occur on the part of Mr. Canatella, multiple instances of it, and, in fact, resulted in him being sanctioned the sum of $4,900. That written order constituted probable cause for my clients to allegedly report that to the State Bar for investigation. The only exception to the Norrpennington Doctrine is the sham exception, and there are very specific requirements for that. The requirements for the sham exception were not pled in Mr. Canatella's First Amendment complaint, and as we established in our pleadings, there was probable cause to go forward with this. The allegations regarding the supposed conspiracy between my clients and the State Bar are completely unsubstantiated. They are improperly pled. They are not supported by a single piece of evidence. And there's simply nothing there. And the critical point, we believe in this case, is that it be established very clearly that the Norrpennington Doctrine does apply to protect both lawyers who are ethically obliged to report suspected misconduct to the State Bar and members of the general public when they see an incident of suspected attorney misconduct and report that to the State Bar for investigation. Now, in this case, as it turned out, the State Bar investigation did not result in any actual discipline. However, the Norrpennington Doctrine simply requires that there be probable cause. In other words, the standard is that no reasonable person could expect to succeed on the merits. That's a lack of probable cause. In this case, there clearly was, because we have a written order with actual findings of misconduct that resulted in a pretty severe sanction. And to require an attorney or a member of the public to second-guess whatever the adjudication is going to be on that would have a horrible chilling effect. And also, the mere chance of being sued in Federal court for reporting an incident of or suspected incident of attorney misconduct to the State Bar would discourage people from doing so, because they're not going to go out on a limb if they're just going to get sued in Federal court no matter whether they're right or wrong. And that is the reason why the California protections exist, and that is the reason why we believe that the Norrpennington Doctrine should be extended specifically to address this protected conduct. And unless Your Honors have any questions, I'll rest. I have no questions.  Thank you, Your Honors. Mr. Canatelli, you get the last word. You've got about two minutes left. I'll address the last speaker. This case has no trappings of antitrust liability whatsoever. This case is as far away from an antitrust case where Norrpennington could properly be invoked as it gets. This was a case of revenge. This attorney represented parties who came in and didn't – a case in State court didn't turn out the way they wanted it. Let me ask you this. I'll assume for the sake of discussion they hate your guts and are trying to do you harm. Even with that, I don't understand how it can be actionable for somebody to accurately tell the State Bar that a Superior Court judge did X, Y, and Z to Mr. Canatelli. How can that be – how can that be tortious? Well, reporting is proper, but you – but there's the motives behind the reporting. It's what – They're terrible motives. Let's stipulate they're terrible motives. But if they say Judge McBride fined Mr. Canatelli $4,900, and if it's true that Judge McBride fined Mr. Canatelli $4,900, I don't understand what – what tort they committed or what they did wrong or what they did that subjects them to suit. Well, you know, we're in a constitutional court, and our claim is – our claim is First Amendment overbreadth. That's where we start. The Bar is applying regulations. But if they defame you, I get that. If they tell the truth about you, I don't get what they did wrong. Well, in this case, we had no opportunity whatsoever. This – this – this order came in on a conversion of some kind. There – there was no notice given to me that the case was going to be converted to summary judgment or that there was going to be an order put in the case which was proper. You can take judicial notice of that order, but it's reasonably disputed. All of the aspects of the order was an 18-page order. It's disputed. I guess you dispute what Judge McBride did to you, but there's no dispute that he did it to you. Well, but I think, what, 201 – Rule 201 permits you to – to challenge an order on the ground that there's a reasonable dispute and that the judge may take judicial notice but would have to weigh – weigh that. But I get – I get the court's point. What do you do in a situation like I'm in where every time you appear, this happens one way or the other? And it's because I'm being disciplined or have been disciplined? I – I don't deserve that. That's not just. Ultimately, this court is an arbiter of justice. And it's not proper to – you know, attorneys play a very important role in this system. And you can't be allowed to simply savage them in – in – in ways like occurred here. Last point, Your Honor. I asked in my pleading, and this is at the volume two of the record, the excerpts, rather, at page 169. And 169 of the record says, Plaintiff has requested that the prior discipline record be expunged. In light of Plaintiff's unblemished record since 1999, 13 years ago, it's now 15, and that the disparaging record of Plaintiff's prior discipline be removed from the website. The State Bar refuses to do so, even though it has discretion to expunge Plaintiff's prior discipline record in order to put Plaintiff at a disadvantage in competing for class with other licensed but undisciplined attorneys. By this unreasonable refusal to expunge Plaintiff's prior discipline record, the if not impossible for Plaintiff to obtain or keep clients and thus earn a sufficient living to remain in practice all on account of his prior discipline nearly 15 years ago. Thank you, Your Honor. Thank you, Mr. Kent. Mr. Hanson, Mr. Duarte, thank you. The case that was just argued is submitted. So we'll stand and recess for today.
judges: Ripple, Silverman, Gould